**BEFORE THE**
**UNITED STATES JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE:  JUUL LABS, INC. PRODUCTS LITIGATION** | **MDL DOCKET NO. _____** |

**BRIEF IN SUPPORT OF JUUL LABS, INC.'S MOTION TO TRANSFER**
**RELATED CASES FOR CONSOLIDATED PRETRIAL PROCEEDINGS**
**<u>PURSUANT TO 28 U.S.C. § 1407</u>**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND ..................................................................................................... 2

III.   LEGAL STANDARD................................................................................................ 7

IV.   ARGUMENT ........................................................................................................... 7

     A.    Transfer to a Single District for Consolidated Pretrial Proceedings Is
           Appropriate Under 28 U.S.C. § 1407 ...................................................... 7

          1.    The Actions Involve Common Questions of Fact....................................... 7

          2.    Consolidation Will Serve "The Convenience of the Parties and
               Witnesses" and "Promote the Just and Efficient Conduct of the
               Actions." .................................................................................................. 9

     B.    The Actions Should Be Transferred to the Northern District of California ........ 14

          1.    Many of the Likely Documents and Witnesses Are Located in the
               Northern District of California................................................................. 15

          2.    No Case Has Advanced Past the Early Stages, and Actions in the
               Northern District of California Have Progressed Furthest. ...................... 15

          3.    Actions Have Been Filed in Districts Across the Country, with the
               Largest Number Pending in the Northern District of California. ............ 16

V.    CONCLUSION.................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Agent Orange Prod. Liab. Litig.*,
818 F.2d 145 (2d Cir. 1987)...........................................................................12

*In re Air Crash near Peixoto De Azevada, Brazil on Sept. 29, 2006*,
493 F. Supp. 2d 1374 (J.P.M.L. 2007).............................................................15

*In re AMF Computerized Cash Register Contract Litig.*,
360 F. Supp. 1404 (J.P.M.L. 1973)..................................................................15

*In re Avaulta Pelvic Support Systems Prods. Liab. Litig.*,
746 F. Supp. 2d 1362 (J.P.M.L. 2010).............................................................17

*Cluck v. IKON Office Sols., Inc.*,
2012 WL 1610789 (N.D. Cal. May 8, 2012) .....................................................9

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)............................................................................................8

*In re: Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*,
2012 WL 7764151 (J.P.M.L. Apr. 16, 2012)....................................................13

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
196 F. Supp. 2d 1375 (J.P.M.L. 2002)..............................................................9

*In re FMC Corp. Patent Litig.*,
422 F. Supp. 1163 (J.P.M.L. 1976)..................................................................12

*In re Fosamax Prods. Liab. Litig.*,
444 F. Supp. 2d 1347 (J.P.M.L. 2006).............................................................16

*In re Generic Pharm. Pricing Antitrust Litig.*,
2017 WL 4582710 (J.P.M.L. Aug. 3, 2017)................................................10, 11

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*,
344 F. Supp. 2d 755 (J.P.M.L. 2004)...............................................................10

*In re Imprelis Herbicide Mktg., Sales Practices & Prod. Liab. Litig.*,
825 F. Supp. 2d 1357 (J.P.M.L. 2011).............................................................10

*In re Ins. Brokerage Antitrust Litig.*,
360 F. Supp. 2d 1371 (J.P.M.L. 2005)..............................................................8

*In re Int'l House of Pancakes Franchise Litig.*,
374 F. Supp. 1406 (J.P.M.L. 1974)..................................................................11

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Johnson & Johnson Talcum Powder Mktg., Sales Practices, & Prods. Liab.
     Litig.,*
     220 F. Supp. 3d 1356 (J.P.M.L. 2016)......................................................................14

*In re Nat'l Football League's "Sunday Ticket" Antitrust Litig.,*
     148 F. Supp. 3d 1358 (J.P.M.L. 2015)......................................................................14

*In re Oxycontin Antitrust Litig.,*
     314 F. Supp. 2d 1388 (J.P.M.L. 2004)......................................................................11

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.,*
     560 F. Supp. 2d 1348 (J.P.M.L. 2008)......................................................................16

*In re Pineapple Antitrust Litig.,*
     342 F. Supp. 2d 1348 (J.P.M.L. 2004)......................................................................10

*In re Plumbing Fixture Cases,*
     298 F. Supp. 484 (J.P.M.L. 1968)............................................................................10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
     170 F. Supp. 2d 1346 (J.P.M.L. 2001)......................................................................13

*In re Rio Hair Naturalizer Prod. Liab. Litig.,*
     904 F. Supp. 1407 (J.P.M.L. 1995)..........................................................................11

*In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.,*
     978 F. Supp. 2d 1379 (J.P.M.L. 2013)......................................................................13

*In re Sierra Wireless, Inc., Sec. Litig.,*
     387 F. Supp. 2d 1363 (J.P.M.L. 2005)......................................................................10

*In re Starmed Health Pers. FLSA Litig.,*
     317 F. Supp. 2d 1380 (J.P.M.L. 2004)........................................................................9

*In re Sugar Indus. Antitrust Litig.,*
     395 F. Supp. 1271 (J.P.M.L. 1975)..........................................................................11

*In re Texas Gulf Sulphur Sec. Litig.,*
     344 F. Supp. 1398 (J.P.M.L. 1972)..........................................................................11

*In re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, Prod.
     Liab. Litig.,*
     704 F. Supp. 2d 1379 (J.P.M.L. 2010)......................................................................14

*In re Toys 'R' Us-Delaware, Inc., FACTA Litig.,*
     581 F. Supp. 2d 1377 (J.P.M.L. 2008)......................................................................10

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re Trade Partners, Inc., Inv'rs Litig.,*
  493 F. Supp. 2d 1381 (J.P.M.L. 2007)...................................................................7

*In re Treasury Sec. Auction Antitrust Litig.,*
  148 F. Supp. 3d 1360 (J.P.M.L. 2015).................................................................14

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab.
  Litig.,*
  363 F. Supp. 3d 1378 (J.P.M.L. 2019).................................................................14

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 350 (2011)...........................................................................................8

*In re Zyprexa Prods. Liab. Litig.,*
  314 F. Supp. 2d 1380 (J.P.M.L. 2004)..................................................................9

**Statutes**

21 U.S.C. § 387.......................................................................................................2

28 U.S.C. § 1404.............................................................................................9, 13

28 U.S.C. § 1407..................................................................................7, 8, 12, 17

**Other Authorities**

ACS, *What Do We Know About E-Cigarettes?* (Nov. 21, 2018),
  https://www.cancer.org/cancer/cancer-causes/tobacco-and-cancer/e-
  cigarettes.html;.....................................................................................................3

Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and
  Cosmetic Act, 81 Fed. Reg. 28974, 28981, 29030 (May 10, 2016) .........................3

FDA 2018 Strategic Policy Roadmap.
  https://www.fda.gov/media/110587/download...................................................2

FDA Commissioner Scott Gottlieb, "A Nicotine-Focused Framework for Public
  Health" https://www.nejm.org/doi/full/10.1056/NEJMp1707409 ...........................2

Statement from FDA Commissioner Scott Gottlieb, M.D., on proposed new steps
  to protect youth by preventing access to flavored tobacco products and
  banning menthol in cigarettes (Nov. 15, 2018),
  https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm6258
  84.htm ..................................................................................................................2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................8

## I.   INTRODUCTION

JUUL Labs, Inc. ("JLI") is a defendant in ten substantially similar cases pending in federal courts throughout the country—six of which are putative class actions.  There are four cases pending before the Honorable Judge William H. Orrick III, consolidated as *In re JUUL Labs, Inc. Products Litigation* ("*In re JUUL*") in the U.S. District Court for the Northern District of California, Case Nos. 18-cv-02499-WHO, 18-cv-06776-WHO, 18-cv-06808-WHO, and 19-cv-02466-WHO, and six other cases pending in federal courts throughout the country.  And plaintiffs' firms across the country appear to be filing (or preparing to file) new cases at a reasonable clip.  Up until the date of this filing, JLI has endeavored to use non-MDL procedures to have cases transferred and coordinated to the first-filed court, with varying degrees of success.

As the volume of federal cases increases, the burdens and challenges associated with litigating transfer-related issues have reached the stage where transfer pursuant to 28 U.S.C. § 1407 and JPML Rule 6.2 is both necessary and appropriate.  Thus, JUUL Labs moves for an order consolidating the ten currently filed cases listed in the Schedule of Actions filed with this Motion (collectively, the "Actions"), as well as any tag-along cases subsequently filed involving similar facts or claims, in the U.S. District Court for the Northern District of California.  The Actions satisfy the requirements for consolidation and transfer under Section 1407, as they involve common questions of fact and law, and consolidation would reduce discovery burdens, avoid inconsistent rulings (particularly on overlapping class certification motions), and avoid the burden to courts and litigants of adjudicating multiple, potentially ineffectual Section 1404 transfer motions.  For the reasons discussed below, which include the fact that four of the cases have already been consolidated in the Northern District of California, where motions to dismiss are pending and discovery is ongoing, the Northern District of California is the appropriate Transferee Court.

## II.    BACKGROUND

All of the cases at issue focus on an important alternative to combustible cigarettes designed and manufactured by JUUL Labs, Inc. ("JLI") for the 34 million current adult cigarette smokers in the United States and approximately one billion adult smokers around the world: electronic nicotine delivery systems ("ENDS"), including the JUUL device and JUULpods. Cigarette smoking is "the foremost preventable cause of premature death in America," 21 U.S.C. § 387 note, responsible for more than 480,000 premature deaths in this country and more than seven million premature deaths worldwide each year.  JUUL products offer an alternative to combustible cigarettes.  While it is well known that nicotine is the addictive property in cigarettes, "[n]icotine . . . is not directly responsible for the tobacco-caused cancer, lung disease, and heart disease that kill hundreds of thousands of Americans each year."[1]  Rather, the toxic chemical compounds in tobacco products—and particularly in the smoke created by setting tobacco on fire—are directly and primarily responsible for the illness and death caused by cigarettes.[2]  The U.S. Food and Drug Administration ("FDA") and other public health organizations recognize that ENDS may offer an "alternative to cigarettes for adults who still seek access to satisfying levels of nicotine, without all the deadly effects of combustion."[3]

JLI was founded by two former smokers who were dissatisfied with the health impacts of cigarettes.  JLI's mission is to improve the lives of the world's one billion adult smokers by

---

[1]  FDA Commissioner Scott Gottlieb, "A Nicotine-Focused Framework for Public Health," https://www.nejm.org/doi/full/10.1056/NEJMp1707409.

[2]  FDA 2018 Strategic Policy Roadmap, https://www.fda.gov/media/110587/download.

[3]  Statement from FDA Commissioner Scott Gottlieb, M.D., on proposed new steps to protect youth by preventing access to flavored tobacco products and banning menthol in cigarettes (Nov. 15, 2018), https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm625884.htm.

eliminating cigarettes.  While JUUL products are not marketed as modified risk tobacco products or smoking cessation products, the American Cancer Society ("ACS"), the FDA, and others recognize that ENDS may pose less risk than cigarettes and could drastically reduce the harms of smoking.[4]

Nevertheless, some, like the plaintiffs in these lawsuits, have mounted sweeping, policy-based attacks on JLI and its products simply because they contain nicotine, disregarding the enormous public health benefit JUUL products can offer when used as intended by adult smokers as an alternative to combustible cigarettes.

Ten lawsuits against JLI are currently pending in six federal districts as follows, and as set out in the attached Schedule of Actions:

a.  **Northern District of California**:

i.  *In re JUUL Labs, Inc. Product Litigation*, No. 3:18-cv-02499-WHO (originally filed as *Colgate v. JUUL Labs, Inc.* on April 26, 2018) (Orrick, J.)

ii.  *Viscomi v. JUUL Labs, Inc.*, No. 3:18-cv-06808-WHO (filed in E.D. Pa. on Aug. 31, 2018, consolidated with *In re JUUL*)

iii.  *J.Y. v. JUUL Labs, Inc.*, No. 3:18-cv-06776-WHO (filed in S.D. Fla. on Oct. 10. 2018, consolidated with *In re JUUL*)

iv.  *Zampa v. Juul Labs, Inc.*, No. 3:19-cv-02466-WHO (filed in S.D. Fla. on Nov. 5, 2018, consolidated with *In re JUUL*)

b.  **Northern District of Alabama**:  *Peavy v. JUUL Labs, Inc.*, No. 19-cv-00779-LSC (N.D. Ala.) (May 22, 2019) (Coogler, J.)

---

[4]  *E.g.*, ACS, *What Do We Know About E-Cigarettes?* (Nov. 21, 2018), https://www.cancer.org/cancer/cancer-causes/tobacco-and-cancer/e-cigarettes.html; Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and Cosmetic Act, 81 Fed. Reg. 28974, 28981, 29030 (May 10, 2016).

c. **Middle District of Alabama**:

    i. *Helms v. JUUL Labs, Inc. et al.*, No. 2:19-cv-527 (M.D. Ala.) (June 14, 2019) (Capel, J.)

    ii. *West v. JUUL Labs, Inc.*, No. 2:19-cv-505 (M.D. Ala.) (July 16, 2019) (Brasher, J.)

d. **Middle District of Florida**: *NesSmith v. JUUL Labs, Inc.*, No. 8:19-cv-00884-MSS-AAS (M.D. Fla.) (Apr. 15, 2019) (Scriven, J.)

e. **Southern District of Florida**: *Shapiro et al v. Altria Group, Inc. et al.*, No. 0:19-cv-61548-DPG (S.D. Fla.) (May 17, 2019) (Gayles, J.)

f. **Southern District of New York**:

    i. *D.P. v. JUUL Labs, Inc.*, No. 7:18-cv-05758-CS (S.D.N.Y.) (June 26, 2018) (Seibel, J.)

These suits substantially overlap in many ways. Six are class actions brought on behalf of nationwide classes and/or subclasses based on plaintiff age or state of residency. All of the complaints name JLI as a defendant, and five actions—*NesSmith*, *Peavy*, *West*, *Shapiro*, and *Helms*—also name one or more of the following entities: PAX Labs, Inc., Altria Group, Inc., Philip Morris USA, and retail stores that sold JLI products.

The legal theories and causes of action asserted in the various complaints also overlap. All allege state common-law torts and/or product liability claims.[5] Seven actions—*In re JUUL* (*Colgate, Viscomi, J.Y.* and *Zampa*), *NesSmith*, *Peavy*, and *Shapiro*—allege violations of state consumer protection laws.[6] Two (*NesSmith* and *Peavy*) allege federal causes of action under the

---

[5] Fraud (*In re JUUL*, *NesSmith*, *Peavy*, *Shapiro*, *Helms*); Strict Liability – Failure to Warn (*In re JUUL*, *NesSmith*, *Peavy*, *D.P.*, *Shapiro*, *Helms*); Strict Liability – Design Defect (*In re JUUL*, *NesSmith*, *Peavy*, *D.P.*, *Shapiro*, *Helms*); Strict Liability – Manufacturing Defect (*In re JUUL*); Negligence (various theories) (*In re JUUL*, *NesSmith*, *Peavy*, *D.P.*, *Shapiro*, *Helms*); Unjust Enrichment (*In re JUUL*, *NesSmith*, *Peavy*, *Shapiro*, *Helms*); Civil Conspiracy (*Shapiro*).

[6] All 50 states (*In re JUUL*); Alabama Deceptive and Unfair Trade Practices Act, Ala. Code § 8-19-1, et seq. (*Peavy*); Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203 (*NesSmith* and *Shapiro*).

Racketeer Influenced and Corruption Organizations Act, 18 U.S.C. §§ 1961–1968.  And all center around the same or closely related operative theories of alleged wrongdoing:  that JLI's marketing of JUUL products allegedly is designed to attract minors; that JLI's marketing allegedly misrepresents or omits that JUUL products are more potent and addictive than cigarettes; that JUUL products allegedly are defective and unreasonably dangerous due to their attractiveness to minors and nicotine content; and that JLI allegedly promotes nicotine addiction.

The class allegations in all of the putative class actions also substantially overlap: although the class definitions vary slightly, all seek to certify nationwide and/or statewide classes of purchasers and/or users of JUUL products.[7]  And all of the putative classes suffer from the same weaknesses that, in JLI's view, will make class certification impossible, including the common struggle to identify any cognizable theory of liability or damages, and the myriad individualized issues that will predominate over common issues.  It is imperative that class certification proceedings be handled in a coordinated manner in a single MDL proceeding.

Finally, all of these actions are in the early stages.  Other than in *In re JUUL*, no motions to dismiss have been decided.  In *In re JUUL*, Judge Orrick granted-in-part JLI's motion to dismiss the *Colgate* action on October 30, 2018.  No. 3:18-cv-02499-WHO (N.D. Cal.) ("N.D. Cal") Doc. 66.  Judge Orrick determined that claims based on JLI's labeling were largely preempted by federal law, but that claims based on advertisements or misrepresentations about the amount of nicotine in JUUL products could proceed.  *Id.* at 1, 10–11.  Judge Orrick has appointed Gutride Safier LLP and Migliaccio & Rathod LLP interim lead counsel for the proposed nationwide class, and his order applies to "any subsequently filed putative class action alleging the same or substantially

---

[7]  *See In re JUUL*, No. 3:18-cv-02499-WHO, ¶¶ 296-305; *NesSmith*, No. 8:19-cv-00884-MSS-AAS, ¶ 85; *Peavy*, No. 19-cv-00779-LSC, ¶ 87.

similar allegations."  N.D. Cal. Docs. 56 & 63.  After Judge Orrick consolidated three cases transferred from other federal courts with and into the *In re JUUL* action,[8] N.D. Cal. Docs. 71 & 129, Plaintiffs in the consolidated *In re JUUL* action filed their operative consolidated amended complaint ("CAC") on January 30, 2019.  N.D. Cal. Doc. 81.  The named plaintiffs in the CAC consist of 44 individuals from 22 states.  *See* N.D. Cal. Doc. 81.  On March 26, JLI moved to dismiss the CAC.  N.D. Cal. Doc. 99.  That motion remains pending as of this filing, and a hearing was held on it before Judge Orrick on June 12, 2019.  N.D. Cal. Doc. 124.  Judge Orrick has indicated that discovery may proceed.  Plaintiffs have served written discovery on JLI in the form of written interrogatories and document requests, and JLI has served document requests on Plaintiffs.  JLI has also begun producing documents.

Plaintiffs have also petitioned California's Judicial Council for coordination of six actions filed in California state courts:  *Cooper v. JUUL Labs, Inc.*, No. CGC-18-566496 (S.F. Super. Ct.) (May 11, 2018) (Massullo, J.); *Malaney v. JUUL Labs, Inc.*, No. 18STCV07497 (L.A. Super. Ct.) (Dec. 7, 2018) (Hogue, J.); *Richardson v. JUUL Labs, Inc.*, No. SICVCV1964083 (Inyo Cty. Super. Ct.) (June 27, 2019) (Place, J.); *Mohr v. JUUL Labs, Inc.*, No. 19STCV23165 (L.A. Super. Ct.) (June 28, 2019); *Batham v. JUUL Labs, Inc.*, No. 19STCV22935 (L.A. Super. Ct.) (June 28, 2019) (Takusugi, J.); *Quackenbush v. JUUL Labs, Inc.*, Case No. RIC1903632 (Riverside Super. Ct.) (July 2, 2019) (Sykes, J.).  JLI will also seek coordination of two recent California state-court actions, filed by separate plaintiffs' counsel.  *See Berger v. JUUL Labs, Inc.*, Case No. CGC-19-

---

[8] *Viscomi v. JUUL Labs, Inc.*, Case No. 3:18-cv-06808-WHO (filed in E.D. Pa. on Aug. 31, 2018); *J.Y. v. JUUL Labs, Inc.*, Case No. 3:18-cv-06776-WHO (filed in S.D. Fla. on Oct. 10. 2018); *Zampa v. Juul Labs, Inc.*, Case No. Case 3:19-cv-02466-WHO (filed in S.D. Fla. on Nov. 5, 2018).

577444 (S.F. Super. Ct.) (July 8, 2019); *Chapman v. JUUL Labs, Inc.*, Case No. CGC-19-577789 (S.F. Super. Ct.) (July 19, 2019).

### III.    LEGAL STANDARD

Transfer and consolidation is appropriate when actions pending in different judicial districts involve similar questions of fact such that consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407.  In relevant part, Section 1407 provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

28 U.S.C. § 1407(a).

### IV.    ARGUMENT

**A.    Transfer to a Single District for Consolidated Pretrial Proceedings Is Appropriate Under 28 U.S.C. § 1407**

Consolidation of pretrial proceedings in an MDL is appropriate if (1) actions pending in different federal courts involve "one or more common questions of fact"; and (2) consolidation "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  Both factors strongly favor consolidation of the pretrial proceedings of these actions.

**1.  The Actions Involve Common Questions of Fact.**

Section 1407 requires that the cases to be consolidated raise "one or more common

questions of fact."[9]  It does not require that the cases to be consolidated be identical in every respect.  "[T]ransfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer."  *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005).  The actions at issue here plainly satisfy this requirement.

All of these actions are brought by JUUL users, or in the case of users who are minors, their guardians, who allege that JLI's marketing of JUUL products is designed to attract minors; that JLI's marketing misrepresents or omits that JUUL products are more potent and addictive than cigarettes; that JUUL products are defective and unreasonably dangerous due to their attractiveness to minors and nicotine content; and that JLI promotes nicotine addiction.  The factual allegations about JLI's conduct in the complaints are substantially the same.  Some complaints are nearly identical.  Three law firms have filed two or more complaints in different jurisdictions.[10]

Factual issues central to determining class certification, liability, and damages will be similar across all the cases.  For example, in each of the actions, JLI's design and marketing of the JUUL products and the alleged impact of those products are central issues that will be critical to determining whether liability exists.  As a result of this substantial overlap, the cases will present substantially similar issues at the motion to dismiss, class certification, and summary judgment phases.

---

[9]  Of course, this inquiry is very different from the class-certification inquiry required by Rule 23.  *See, e.g.*, *In re Trade Partners, Inc., Inv'rs Litig.*, 493 F. Supp. 2d 1381 (J.P.M.L. 2007) (centralization under section 1407 appropriate even where individual questions of fact and law predominate for class-certification purposes).  JLI reserves all of its defenses to class certification, including, but not limited to, the absence of common questions susceptible to common answers (*see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)), and the fact that common questions do not predominate over individualized questions.  *See* Fed. R. Civ. P. 23(b)(3); *Comcast Corp. v. Behrend*, 569 U.S. 27, 41 (2013).

[10]  Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. (*West* and *Helms*); Berger & Montague P.C. (*J.Y.* and *Viscomi*); Schlesinger Law Offices (*NesSmith* and *Shapiro*).

Accordingly, these actions present "one or more common question of fact."  28 U.S.C. § 1407(a).

### 2. Consolidation Will Serve "The Convenience of the Parties and Witnesses" and "Promote the Just and Efficient Conduct of the Actions."

Consolidation pursuant to Section 1407(a) also would be more convenient for the parties and efficient for the Court for several reasons, and equivalent efficiencies cannot be accomplished by transferring individual cases under Section 1404.

#### a. Consolidation will reduce discovery burdens.

Litigating these cases separately would impose substantial and duplicative discovery burdens.  The Panel has consistently held that transfer under Section 1407 is intended to prevent such duplication.  *See, e.g.*, *In re Starmed Health Pers. FLSA Litig.*, 317 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004) (consolidating two actions in part because transfer was necessary to "eliminate duplicative discovery" and "conserve the resources of the parties").[11]

Because all of the actions concern the same products and allege the same conduct by JLI, discovery in the ten actions will overlap substantially, including the same witnesses, the same documentary evidence, and the same third-party discovery.  "Allowing the witnesses to appear once in a single venue is more convenient than requiring them to appear multiple times in multiple venues."  *Cluck v. IKON Office Sols., Inc.*, No. 11-05027-JSW, 2012 WL 1610789, at *2 (N.D.

---

[11] *See also In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1382 (J.P.M.L. 2004) ("[T]ransfer under Section 1407 will offer the benefit of placing all actions in this docket before a single judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs while ensuring that common parties and witnesses are not subjected to discovery demands that duplicate activity that will occur or has already occurred in other actions."); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376–77 (J.P.M.L. 2002) (consolidating multiple actions because of the cases' strong connection to Southern District of Texas, where Enron was headquartered, witnesses were located, and auditors performed their work).

Cal. May 8, 2012).  As the Panel has recognized, only centralization can achieve this goal: "informal coordination and cooperation among the parties and courts" is not "sufficient to eliminate the potential for duplicative discovery, inconsistent pretrial rulings, and conflicting discovery obligations."  *In re Generic Pharm. Pricing Antitrust Litig.*, No. MDL 2724, 2017 WL 4582710, at *2 (J.P.M.L. Aug. 3, 2017).

b.  <u>Consolidation will avoid inconsistent rulings.</u>

Centralization will eliminate the risk of inconsistent pretrial rulings on discovery, dispositive motions, and other pretrial matters.  *See, e.g.*, *In re Pineapple Antitrust Litig.*, 342 F. Supp. 2d 1348, 1349 (J.P.M.L. 2004) (consolidating cases to "prevent inconsistent pretrial rulings").  That risk is especially acute in putative class actions with overlapping class members, as is the case here.  *See, e.g.*, *In re Imprelis Herbicide Mktg., Sales Practices & Prod. Liab. Litig.*, 825 F. Supp. 2d 1357, 1359 (J.P.M.L. 2011) (in case of "overlap" of statewide and nationwide putative classes, "[c]entralization in one district will bring efficiencies to the pretrial proceedings of these actions and will eliminate duplicative discovery and prevent inconsistent pretrial rulings, particularly with respect to class certification"); *In re Toys 'R' Us-Delaware, Inc., FACTA Litig.*, 581 F. Supp. 2d 1377, 1377-78 (J.P.M.L. 2008); *In re Sierra Wireless, Inc., Sec. Litig.*, 387 F. Supp. 2d 1363, 1364 (J.P.M.L. 2005); *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 344 F. Supp. 2d 755, 757 (J.P.M.L. 2004).  Consolidation is necessary to avert the "pretrial chaos" resulting from "conflicting class action determinations," which Section 1407 was designed to prevent.  *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 492–93 (J.P.M.L. 1968).

These actions involve a significant number of overlapping (and often identical) factual allegations, legal claims, and putative class members.  For example, several cases involve allegations that JLI failed to provide various warnings to consumers on its product packaging, and Judge Orrick has held that such theories of liability are preempted by federal law.  N.D. Cal. Doc.

66.  Allowing them to proceed separately through the pretrial process would create a significant risk of inconsistent pretrial rulings on a wide range of issues that could directly lead to inconsistent outcomes, including for members of the same putative classes whose interests are ostensibly represented in multiple jurisdictions.  *See In re Texas Gulf Sulphur Sec. Litig.*, 344 F. Supp. 1398, 1400 (J.P.M.L. 1972) ("We have frequently held that the possibility of inconsistent class action determinations is an important factor favoring transfer."); *see also In re Rio Hair Naturalizer Prod. Liab. Litig.*, 904 F. Supp. 1407, 1408 (J.P.M.L. 1995) (consolidation necessary for actions with "overlapping class certification requests"); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) (consolidation necessary for actions with "overlap[ping] or duplicat[ive]" class allegations).  Centralization would prevent such inconsistency.

Transfer is particularly appropriate because these actions are still in the early stages. Although some discovery has taken place, and motions to dismiss have been heard in *In re JUUL*, "significant discovery . . . remains."  *In re Generic Pharm.*, 2017 WL 4582710, at *2.  There is therefore "ample scope to eliminate duplication and enhance the convenience of the parties, the witnesses, and the courts through coordinated proceedings in the MDL," and there are "benefits to coordinating pretrial motions, as none of the actions has advanced beyond motions to dismiss." *Id*; *see also, e.g.*, *In re Int'l House of Pancakes Franchise Litig.*, 374 F. Supp. 1406, 1407 (J.P.M.L. 1974) (noting that transfer is appropriate where discovery is not well-advanced).

c.  Establishing an MDL now is the most efficient way to advance the litigation.

It is appropriate to grant centralization now, without forcing the parties to continue to litigate multiple change of venue motions, given the significant efforts already expended on such motions and the multiple tag along actions that likely will be filed in the coming weeks or months.  *In re Oxycontin Antitrust Litig.*, 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004) ("Given

that the number of related actions continues to grow, along with the potential need for additional motions to transfer venue, we find that transfer under Section 1407 is warranted.").

Although some of JLI's motions to transfer cases to the Northern District of California have led to transfers by stipulation or order, filing individual transfer motions has become time-consuming and sometimes ineffectual.  Transfer was denied in the *D.P.* case, and Judge Gayles expressed concern about transfer in *Shapiro*, but the obstacles to transfer would be resolved if an MDL were established.  In *D.P.*, Judge Seibel denied transfer in part to avoid forcing an individual plaintiff to travel to California for trial, No. 7:18-cv-05758-CS (S.D.N.Y.), Doc. 46 at 33, but in an MDL, the case would return to New York for trial while still achieving efficiencies during discovery and pre-trial motions, *see* 28 U.S.C. § 1407.[12]  And in *Shapiro*, the court questioned whether transfer would be possible because California courts did not appear to have personal jurisdiction over some of the retail defendants who sold JLI products.  No. 0:19-cv-61548-DPG (S.D. Fla.), Doc. 16.  An MDL would eliminate that obstacle.  *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987) ("[t]ransfers under Section 1407 are simply not encumbered by considerations of in personam jurisdiction and venue") (quoting *In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976)).

---

[12]  Judge Siebel also expressed concern that plaintiff D.P. was advancing product liability claims under New York law, but her understanding *at the time* based on the First Amended Complaint in *In re JUUL* was that the plaintiffs in that proceeding were advancing products liability claims under California law only, and therefore it was not clear to that court that the same legal issues would arise in the two proceedings.  No. 7:18-cv-05758-CS (S.D.N.Y.), Doc. 46 at 20.  That reasoning no longer applies because it is *now* clear from the Consolidated Amended Complaint in *In re JUUL* that the plaintiffs are invoking *all* states' laws, including New York law.  *See* N.D. Cal. Docs. 81-5, 81-6, 82-3, & 81-8 (Consolidated Amended Complaint, App'x D-G).

JLI also anticipates that more cases will be filed.  Five of the ten federal lawsuits against JLI were filed within the last four months.  And the plaintiffs' bar is actively encouraging the filing of additional lawsuits by holding seminars detailing the supposed facts and legal theories for lawsuits against JLI.[13]  Litigating multiple contested motions to transfer such lawsuits would be unnecessarily time-consuming and, given the discretionary nature of Section 1404, would provide no guarantee that the actions actually would end up in a single district.  Extending the proceedings in this way would be burdensome to the parties and the judicial system, and would not accomplish the immediate coordination of motion practice and discovery that JLI believes is essential. Because cases are pending in several different districts and are likely to be followed by additional actions, there is no "reasonable prospect" that Section 1404 transfer would "eliminate the multidistrict character of the litigation," and transfer under Section 1407 is appropriate.  *In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1380–81 (J.P.M.L. 2013).

Pending remand motions in some of the cases provide no impediment to transfer.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001) ("remand motions can be presented to and decided by the transferee judge").  In fact, "[t]he Panel often has held that a pending motion for remand is not a bar to transfer."  *In re: Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 2012 WL 7764151, at *1 (J.P.M.L. Apr. 16, 2012).

---

[13]  Exhibit A (advertising a half-day CLE scheduled for September 2019, entitled *HarrisMartin's JUUL, E-Cigarettes & Vaping Conference: Emerging Litigation and Liability Theories*); Exhibit B (describing a July 2019 webinar entitled *An Emerging Mass Tort: Severe Nicotine Addiction And Other Serious Health Problems In Adolescents And Young Adults*).

      d.  <u>Centralizing both class and individual actions would best achieve these efficiencies.</u>

Six of the pending federal cases are pleaded as class actions, and five are individual actions. But the core factual issues in all of these cases will be the same because they center around allegations regarding JLI's product—its potency, addictiveness, and purported defects—and JLI's conduct—including its marketing and alleged promotion of nicotine addiction.  The Panel "often has recognized the efficiencies of centralizing" class and individual actions, where, as here, "'liability discovery in all the cases will certainly overlap.'"  *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d 1378, 1382 (J.P.M.L. 2019) (quoting *In re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, Prod. Liab. Litig.*, 704 F. Supp. 2d 1379, 1381–82 (J.P.M.L. 2010)); *see also In re Johnson & Johnson Talcum Powder Mktg., Sales Practices, & Prods. Liab. Litig.*, 220 F. Supp. 3d 1356, 1357 (J.P.M.L. 2016) (centralizing nine personal injury actions and two consumer class actions; "[a]ll the actions involve factual questions relating to the risk of cancer posed by [defendant's product] ... [and] whether the defendants knew or should have known of this alleged risk").  Any issues unique to the individual cases could be appropriately addressed by the transferee judge.  *In re Toyota*, 704 F. Supp. 2d at 1381–82 (observing that any necessary individual discovery is "regularly and successfully coordinated" with the other actions).

**B.      The Actions Should Be Transferred to the Northern District of California**

In selecting an appropriate transferee district, the Panel generally considers:  (1) the location where most discovery will take place or where the relevant conduct occurred; (2) the procedural stage of each case; (3) the docket conditions of the potential transferee districts; and (4) where the cases have been filed.  *See, e.g.*, *In re Treasury Sec. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360, 1361–62 (J.P.M.L. 2015) (transferring to Southern District of New York because

all defendants were headquartered there and because the majority of cases had been filed in that district); *In re Nat'l Football League's "Sunday Ticket" Antitrust Litig.*, 148 F. Supp. 3d 1358, 1359–60 (J.P.M.L. 2015) (transferring to Central District of California because several actions had been filed there, defendant maintained its headquarters there, and common evidence would likely be found there).

These factors strongly favor the Northern District of California:  that District is home to JLI's headquarters, and it is where the most relevant witnesses work and the documentary evidence will be located.  It also is where the largest share of the actions (4 of 10) are pending, and Judge Orrick is an experienced jurist who has presided over cases against JLI for over a year.

### 1.  Many of the Likely Documents and Witnesses Are Located in the Northern District of California.

One factor the Panel considers in selecting an appropriate transferee district is the location where most discovery will take place or where the relevant conduct occurred.  *See, e.g., In re AMF Computerized Cash Register Contract Litig.*, 360 F. Supp. 1404, 1405 (J.P.M.L. 1973).  To the extent discovery focuses on JLI's product, advertising, and other operations, that discovery will be centered in the Northern District of California, where JLI is based and most of its relevant documents and witnesses reside.  The Northern District of California would therefore be the most convenient location for the parties and potential witnesses.[14]

### 2.  No Case Has Advanced Past the Early Stages, and Actions in the Northern District of California Have Progressed Furthest.

This Panel has often considered the procedural advancement of the pending cases as part

---

[14]  PAX Labs, Inc. is also headquartered in San Francisco, California.  Altria Group, Inc. and Philip Morris USA Inc. are headquartered in Richmond, Virginia, but JLI is the entity that developed and marketed the products at issue.  Further, JLI has been informed that Altria Group, Inc. and Philip Morris USA Inc. favor transfer to the Northern District of California.

of its selection of a transferee district. For example, in *In re Air Crash near Peixoto De Azevada, Brazil on Sept. 29, 2006*, 493 F. Supp. 2d 1374 (J.P.M.L. 2007), the Panel selected a transferee district where the first-filed case was pending and where the pending actions were "more procedurally advanced than the actions pending elsewhere." *Id.* at 1376. Here, that district is the Northern District of California, where the first-filed *Colgate* (and now the consolidated *In re JUUL*) action was filed, and where Judge Orrick has presided over initial discovery and two rounds of motions to dismiss. No other case has advanced past the pleadings stage.[15] Additionally, Judge Orrick has already appointed Interim Class Counsel in *In re JUUL*, and those lawyers are based in San Francisco, California.

### 3. Actions Have Been Filed in Districts Across the Country, with the Largest Number Pending in the Northern District of California.

The Panel also regularly considers the districts where the actions are pending in selecting the transferee district. *See, e.g.*, *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 560 F. Supp. 2d 1348, 1349 (J.P.M.L. 2008) (selecting a transferee district in part because two of four filed actions were already pending there); *In re Fosamax Prods. Liab. Litig.*, 444 F. Supp. 2d 1347, 1349–50 (J.P.M.L. 2006) (15 of 19 actions already pending in transferee district).

Here, plaintiffs have filed actions against JLI in six districts across the country. Four actions are pending in the Northern District of California—more than in any other district. Two of those actions (*J.Y.* and *Viscomi*) were transferred by stipulation, indicating that plaintiffs' counsel recognized the appropriate venue for the actions, as well as the efficiencies that would be achieved through consolidation. Another (*Zampa*) was transferred under the first-to-file rule, based in part on the fact that that the first-filed action was more procedurally advanced, a factor

---

[15] A motion to dismiss in *D.P.* is fully briefed as of July 2, 2019. No hearing date has been set.

that also bears on the Panel's analysis.  *See* S.D. Fl. Case No. 18-cv-25005, Dkt. 25 at 9–11 (reasoning that the N.D. Cal. actions were more procedurally advanced, including with respect to discovery).

Moreover, as discussed above, eight state-court actions have been filed in California, and the California Judicial Council is currently evaluating coordination of those actions, which is highly likely.  All of the state-court actions assert factual allegations virtually identical to the federal cases.  Transfer of these cases to the Northern District will thus promote coordination between the parallel state and federal actions.  *See, e.g.*, *In re Avaulta Pelvic Support Systems Prods. Liab. Litig.*, 746 F. Supp. 2d 1362, 1364 (J.P.M.L. 2010) (transferring to the Southern District of West Virginia because "centralization in this district will facilitate coordination with West Virginia state court actions").

## V.    CONCLUSION

For the foregoing reasons, the consolidation and transfer of these actions under the multidistrict litigation procedure would further "the convenience of parties and witnesses and promote the just and efficient conduct of [the] actions."  28 U.S.C. § 1407(a).  JLI respectfully requests that this Panel enter an order transferring the actions listed on the attached Schedule for consolidated pretrial proceedings in the Northern District of California, which is home to JLI's headquarters, where most of the actions have been filed to date, and where the witnesses and documents likely to be the focus of discovery are located.

Dated:  July 29, 2019

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By:  /s/ *Austin V. Schwing*
Charles J. Stevens, SBN 106981
Austin V. Schwing, SBN 211696
Winston Y. Chan, SBN 214884
Joshua D. Dick, SBN 268853
Peter C. Squeri, SBN 286249
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306
*aschwing@gibsondunn.com*

Deborah L. Stein, SBN 224570
Jessica R. Culpepper, SBN 304336
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Defendant JUUL LABS, INC.