# EXHIBIT 5

ADRMOP,CONSOL,RELATE

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:18-cv-06776-WHO

Y. et al v. Juul Labs, Inc.                          Date Filed: 11/08/2018
Assigned to: Judge William H. Orrick                 Jury Demand: Plaintiff
Lead case: 3:18-cv-02499-WHO                          Nature of Suit: 365 Personal Inj. Prod.
Member case: (View Member Case)                       Liability
Relate Case Cases:  3:18-cv-02499-WHO                Jurisdiction: Diversity
                    3:18-cv-06808-WHO
Case in other court:  Florida Southern, 2:18-cv-14416
Cause: 28:1332 Diversity-Product Liability

**Plaintiff**

**J. Y.**                                    represented by   **Jonathan Zachary DeSantis**
*a minor, by and with his mother and*                         Berger & Montague P.C.
*Natural Guardian Barbara Yannucci,*                          1818 Market Street
*individually and on behalf of those*                         Suite 3600
*similarly situated,*                                         Philadelphia, PA 19013
                                                              (215) 875-3000
                                                              Email: jdesantis@bm.net
                                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Barbara Yannucci**                         represented by   **Jonathan Zachary DeSantis**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Juul Labs, Inc.**                          represented by   **Austin Van Schwing**
                                                              Gibson, Dunn & Crutcher LLP
                                                              555 Mission Street
                                                              Suite 3000
                                                              San Francisco, CA 94105-2933
                                                              415-393-8210
                                                              Fax: 415-374-8458
                                                              Email: aschwing@gibsondunn.com
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **George S. LeMieux**
                                                              Gunster Yoakley & Stewart

450 E Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
954-468-1339
Fax: 954-523-1722
Email: glemieux@gunster.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/10/2018 | 1 | COMPLAINT *(Class Action Complaint)* against Juul Labs, Inc.. Filing fees $ 400.00 receipt number 113C-11064238, filed by J. Y., Barbara Yannucci. (Attachments: # 1 Civil Cover Sheet, # 2 Summon(s))(DeSantis, Jonathan) (Entered: 10/10/2018) |
| 10/10/2018 | 2 | Clerks Notice of Judge Assignment to Judge Robin L. Rosenberg and Magistrate Judge Shaniek M. Maynard.<br><br>Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Shaniek M. Maynard is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. (ls) (Entered: 10/11/2018) |
| 10/11/2018 | 3 | Clerks Notice to Filer re: Electronic Case. Incorrect case opening information. The Filer selected the incorrect *Nature of Suit* when filing. The correction was made. It is not necessary to re-file this document. (ls) (Entered: 10/11/2018) |
| 10/11/2018 | 4 | Summons Issued as to Juul Labs, Inc.. (ls) (Entered: 10/11/2018) |
| 10/11/2018 | 5 | WAIVER OF SERVICE Returned Executed by J. Y., Barbara Yannucci. Juul Labs, Inc. waiver sent on 10/10/2018, answer due 12/10/2018. (DeSantis, Jonathan) (Entered: 10/11/2018) |
| 10/24/2018 | 6 | SCHEDULING ORDER: ( Jury Trial set for 9/30/2019 09:00 AM in Fort Pierce Division before Judge Robin L. Rosenberg., Calendar Call set for 9/25/2019 09:00 AM before Judge Robin L. Rosenberg., Status Conference set for 8/28/2019 09:30 AM before Judge Robin L. Rosenberg.), Order of Requirements, ORDER REFERRING CASE to Magistrate Judge Shaniek M. Maynard for Discovery Matters. Signed by Judge Robin L. Rosenberg on 10/24/2018. *See attached document for full details.* (ls)<br><br>**Pattern Jury Instruction Builder - To access the latest, up to date changes to the 11th Circuit Pattern Jury Instructions go to https://pji.ca11.uscourts.gov or click here.** (Entered: 10/24/2018) |
| 10/24/2018 | 7 | ORDER Setting Discovery Procedures. Signed by Magistrate Judge Shaniek M. Maynard on 10/24/2018. *See attached document for full details.* (ls) (Entered: 10/25/2018) |
| 11/05/2018 | 8 | Corporate Disclosure Statement by Juul Labs, Inc. (LeMieux, George) (Entered: 11/05/2018) |

| 11/05/2018 | 9 | Stipulation and Joint Motion to Change Venue/Transfer Action by Juul Labs, Inc. (LeMieux, George) Modified to convert document to a motion on 11/6/2018 (ls). (Entered: 11/05/2018) |
|---|---|---|
| 11/06/2018 | 10 | Clerks Notice to Filer re 9 Stipulation. **Wrong Event Selected - Document is a Motion**; ERROR - The Filer selected the wrong event. A motion event must always be selected when filing a motion. The correction was made by the Clerk. It is not necessary to refile this document. (ls) (Entered: 11/06/2018) |
| 11/06/2018 | 11 | ORDER granting 9 Stipulation and Joint Motion to Transfer Action; Transferring Action to the United States District Court for the Northern District of California. Signed by Judge Robin L. Rosenberg on 11/6/2018. *See attached document for full details.* (ls) (Entered: 11/06/2018) |
| 11/06/2018 | | Civil Case Terminated. Closing Case. (ls) (Entered: 11/06/2018) |
| 11/08/2018 | 12 | Case transferred in from District of Florida Southern; Case Number 2:18-cv-14416. Original file certified copy of transfer order and docket sheet received. (Entered: 11/08/2018) |
| 11/08/2018 | 13 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 2/1/2019. Initial Case Management Conference set for 2/8/2019 02:00 PM in San Francisco, Courtroom G, 15th Floor. (gbaS, COURT STAFF) (Filed on 11/8/2018) (Entered: 11/08/2018)** |
| 11/21/2018 | 14 | NOTICE of Appearance by Austin Van Schwing (Schwing, Austin) (Filed on 11/21/2018) (Entered: 11/21/2018) |
| 11/21/2018 | 15 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by JUUL Labs, Inc... (Schwing, Austin) (Filed on 11/21/2018) (Entered: 11/21/2018) |
| 11/26/2018 | 16 | CLERK'S NOTICE of Impending Reassignment to U.S. District Judge (klhS, COURT STAFF) (Filed on 11/26/2018) (Entered: 11/26/2018) |
| 11/27/2018 | 17 | **ORDER TO RELATE ACTIONS PURSUANT TO CIVIL LOCAL RULES 3-12 AND 7-11 AND TO CONSOLIDATE ACTIONS. This matter will be related to and consolidated with Case No. 3:18cv2499-WHO. Signed by Judge William H. Orrick on 11/27/2018. (jmdS, COURT STAFF) (Filed on 11/27/2018) (Entered: 11/27/2018)** |
| 11/27/2018 | 18 | **ORDER, Case reassigned to Judge Haywood S Gilliam, Jr. Magistrate Judge Joseph C. Spero no longer assigned to the case.. Signed by Executive Committee on 11/27/18. (haS, COURT STAFF) (Filed on 11/27/2018) (Entered: 11/27/2018)** |
| 11/28/2018 | 19 | Case reassigned to Judge William H. Orrick. Judge Haywood S Gilliam, Jr no longer assigned to the case. This case is assigned to a judge who participates in the Cameras in the Courtroom Pilot Project. See General Order 65 and http://cand.uscourts.gov/cameras (haS, COURT STAFF) (Filed on 11/28/2018) (Entered: 11/28/2018) |
| 06/18/2019 | 20 | **Order by Judge William H. Orrick granting (121) Motion to Relate Case and Consolidate Cases into case 3:18-cv-02499-WHO. Associated Member** |

**Cases: 3:18-cv-06776-WHO and 3:18-cv-06808-WHO. (jmdS, COURT STAFF) (Filed on 6/18/2019) (Entered: 06/18/2019)**

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 07/29/2019 08:28:11 | | | |
| PACER Login: | gd0026LA:2553426:4036719 | Client Code: | 46522-00004 |
| Description: | Docket Report | Search Criteria: | 3:18-cv-06776-WHO |
| Billable Pages: | 3 | Cost: | 0.30 |

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

J.Y., a minor, by and with his mother and
Natural Guardian BARBARA YANNUCCI,
individually and on behalf of those similarly
situated,

                 Plaintiffs,

v.

JUUL LABS, INC.,

                 Defendant.

_____

**Case No. 1:18cv24186**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMAND**

## CLASS ACTION COMPLAINT

I.    **INTRODUCTION**

1.    Plaintiff J.Y., a minor, by and with his mother and Natural Guardian Barbara Yannucci (together, "Plaintiffs") bring this action against Defendant JUUL Labs, Inc. ("JUUL" or "Defendant"), on behalf of themselves and those similarly situated, for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.21, e*t seq*., fraud, unjust enrichment, failure to warn, breach of implied and express warranties, and negligence. Plaintiffs bring this action on behalf of a class of all persons who purchased and used a JUUL e-cigarette and/or JUUL Pods in Florida, including minors.

2.    Plaintiffs' allegations are based upon their information and belief, except those allegations concerning themselves which are based on personal knowledge. Plaintiffs' information and belief are based on the investigation conducted by their attorneys which included, among other things, review and analysis of public statements, news articles and other reports about Defendant and other publicly available information.

3.      This case arises out of Defendant's false and deceptive sale, marketing, labelling and advertising of JUUL e-cigarette devices and JUUL pods which came into the market in 2015. This device has been called the "health problem of the decade."  E-cigarettes, also known as vapes, are battery-operated devices that heat up liquid nicotine to generate an aerosol that users inhale.

4.       Although Defendant claims that the device is intended exclusively for adult use, the devices appeals to youth because it can be easily charged on a laptop, its decal covers come in colorful designs, and the pods are available in flavors such as mango, mint and crème brûlée. Moreover, using e-cigarettes is more discreet and easier to hide than traditional cigarettes, particularly for teens at school or at home and young adults.

5.      To use one JUUL pod, the nicotine cartridge is inserted into the device and heated. It delivers about 200 puffs, which delivers approximately as much nicotine as a pack of cigarettes, according to the product website.  Thus, if a teen consumes one pod a week, in five weeks, it is equivalent to about 100 cigarettes (5 packs of cigarettes).  This makes the teen equivalent to an established smoker.[1]

6.      Medical professionals and public health advocates say that the e-cigarette trend reminds them of the heyday of cigarettes, when smoking behind school buildings and in parking lots was in vogue.   However, the risks here are magnified because, unlike traditional cigarettes, JUUL can be used indoors without anyone noticing.  It also packs a more powerful nicotine punch than traditional cigarettes because JUUL contains roughly twice the nicotine concentration as cigarettes and other vape pens.

---

[1]Ana B. Ibarra et al., *The Juul's So Cool, Kids Smoke It In School,* WASH. POST (Mar. 26, 2018), *available at* https://www.washingtonpost.com/national/health-science/the-juuls-so-cool-kids-smoke-it-in-school/2018/03/26/32bb7d80-30d6-11e8-b6bd-0084a1666987_story.html?utm_term=.d664213cde10.

7.    Senate democratic whip Dick Durbin (D-IL) and 10 other Senators sent two letters to JUUL saying that their products "are undermining our nation's efforts to reduce tobacco use among youth."[2]

8.    Plaintiffs allege that Defendant knew that JUUL e-cigarettes were not safe under any circumstances for non-smokers and posed a risk of aggravating nicotine addiction in those already addicted to nicotine.  Defendant also knew that JUUL's nicotine solution could deliver more nicotine into the bloodstream than a cigarette, and did so more quickly than a cigarette. Defendant was under a duty to disclose these material facts, but never did so.

9.    Instead, Defendant continued to disseminate false, misleading and deceitful information to Plaintiffs and the public on JUUL's website, in interviews, advertisements and through social media.  Defendant created an online culture and community targeted to young people and designed to encourage JUUL use.

10.    Defendant's advertisements have been wildly successful in disseminating false information, primarily to teens and young adults on social media platforms.  For example, there are 194,825 posts using the #juul hashtag and 16,500 using the #juulnation hashtag on Instagram, and the JUULvapors profile on Instagram has 62,000 followers.  A video taunting "How many hits can you do?" had more than 230,000 view and 380 comments in seven weeks.  Young people are flocking to this enticing and dangerous device.

## II.    JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more members of each class; (ii) the aggregate amount in

---

[2] Erin Brodwin, *Experts are calling out a vape pen with 'scary' nicotine levels that teens love — here's how it affects the brain*, BUSINESS INSIDER (Apr. 19, 2018), *available at* https://www.businessinsider.com/vaping-brain-effects-juul-2018-4.

controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) at least one Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant regularly transacts and solicits business in this District and because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## III.     PARTIES

### A.     PLAINTIFF J.Y.

13.     Plaintiff J.Y. is a minor who is a citizen of Florida, residing in Port St. Lucie.

14.     Plaintiff J.Y. is presently 16 years old and began using JUUL pods at the age of 15 because he thought it was fun.

15.     When he first tried a JUUL, Plaintiff J.Y., as a minor, could not appreciate the dangers posed by the nicotine and other chemicals contained in the JUUL, and was not aware how much nicotine a JUUL contained or that the JUUL had specifically been developed to maximize the addictive effects of the nicotine it contained and to put extremely high doses of nicotine into the bloodstream.

16.     Plaintiff J.Y. states that many of his friends in high school were consuming JUUL products at the time he began using JUUL and continue to do so. JUUL products were and still are popular, ubiquitous and easy to obtain.

17.     Plaintiff J.Y., a minor, has himself purchased JUUL products at a Wawa convenience store.

18.     Plaintiff J.Y. now considers himself addicted to JUUL pods and consumes JUUL pods 12 times per day. His favorite flavor is mint.

19.     Plaintiff J.Y. is not aware of any label on JUUL packaging indicating that the product contains nicotine or warning of the dangers of the nicotine because he does not read the packaging.

20.     Plaintiff J.Y. initially concealed his use of JUUL from his mother and Natural Guardian Barbara Yannucci, who, after learning that JUUL products contain nicotine and appreciating the dangers of nicotine, has done and continues to do everything in her power to get her son to quit using JUUL products. She has not been successful to date.

### B.    **DEFENDANT**

21.     Defendant Juul Labs, Inc. ("JUUL") is incorporated in Delaware, with its principal place of business in San Francisco, California.

22.     Prior to 2017, when much of the conduct alleged herein occurred, JUUL was known as PAX Labs, Inc.

23.     Defendant ratified each and every act or omission alleged herein in proximately causing the injuries and damages alleged herein.

## IV.    **CLASS ACTION ALLEGATIONS**

24.     Plaintiff J.Y., a minor, by and with his mother and Natural Guardian Barbara Yannucci, bring this action against Defendant on behalf of themselves and all other similarly situated purchasers and users of JUUL products in Florida (the "FL Class" or the "Class").

25.     Excluded from the FL Class are Defendant herein, the officers and directors of the Defendant, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

26.     The members of the FL Class are so numerous that joinder of all members is impracticable.  While the exact number of FL Class members is unknown to Plaintiffs at this time

and can be ascertained only through appropriate discovery, Plaintiffs believe that there are at least thousands of members the proposed Class.

27.     Plaintiffs' claims are typical of the claims of the members of the Class as all members are similarly affected by Defendant's wrongful conduct alleged herein.

28.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

29.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

       a.    Whether Defendant's advertising and marketing deceived Class Members;

       b.    Whether Defendant intentionally omitted material information from JUUL's advertising, marketing and packaging materials;

       c.    Whether Defendant's alleged conduct is knowing, reckless, or negligent;

       d.    The amount of revenues, profits and benefits Defendant received as a result of the alleged such wrongdoing and whether it is unfair for it to retain such benefits;

       e.    Whether Class Members are entitled to compensatory, punitive and/or treble damages; and

       f.    Whether Class Members are entitled to injunctive and other equitable relief.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## V.   FACTUAL ALLEGATIONS

31.     The JUUL e-cigarette is about the size and shape of a pack of chewing gum.  It resembles a USB flash drive. It consists of a rectangular enclosure containing a rechargeable battery and heating element and a pre-filled pod of JUUL's patented nicotine solution, which slides into the end of the JUUL device.

32.     The JUUL e-cigarette is a proprietary system that is incompatible with other e-cigarette components or liquids.



33.     Nicotine is a highly addictive substance. It is a stimulant that affects the central nervous system, and, when ingested, can accelerate blood pressure, pulse, affect mood, increase circulating levels of hormones, increase metabolic rate, constrict blood vessels of the heart and skin, and cause muscle relaxation.

34.     Although marketed as a safer alternative to smoking, Defendant's JUUL e-cigarettes and JUULpods still deliver dangerous toxins and carcinogens to teenage users.  Nicotine itself is a carcinogen, as well as a toxic chemical associated with cardiovascular, reproductive, and immunosuppressive problems.

35.     Nicotine adversely affects the heart, eyes, reproductive system, lungs, and kidneys.

7

36.     Exposure to nicotine from sources such as nicotine gum still produces an increased risk of Coronary Vascular Disease by producing acute myocardial ischemia, as well as an increased risk of peripheral arterial disorders.

37.     Because vaping still introduces foreign substances into the lungs, prolonged use of vaping products is likely to produce chronic obstructive pulmonary disease, just like traditional cigarette smoke.

38.     Vaping also triggers immune responses associated with inflammatory lung diseases.

39.     There is also evidence that nicotine can affect neurological development in adolescents, and that exposure to nicotine during adolescence can produces an increased vulnerability to nicotine addiction.

40.     Despite making numerous revisions to its packaging since 2015, JUUL has not added nicotine warnings to the JUUL device, the JUULpods, or their product labels, until very recently, when the exterior packaging was changed to add the following warning:

**WARNING:**

**This product contains nicotine.  Nicotine is an addictive chemical.**

41.     The new exterior packaging also contains a statement in small print: "The Alternative for Adult Smokers."

42.     These recent exterior packaging changes are an admission of the inadequacy of previous labels, but they are too little, too late, and are completely insufficient to warn JUUL users of the real dangers of this product.

43.     The recently–added warning fails to disclose the highly addictive attributes  of the product itself, including, inter alia, that the JUULpods' nicotine salt formulation delivers an

exceptionally potent dose of nicotine, that JUUL is delivering doses of nicotine that are several times higher than those allowed in normal cigarettes, that the efficiency with which the product delivers nicotine into the bloodstream increases its addictiveness, that it can be more addictive than traditional cigarettes and that it poses serious health risks.



(Spring, 2018 to present)



(2015 – Spring, 2018)

## A. JUUL PRODUCTS DELIVERS A FAR MORE POTENT DOSE OF NICOTINE THAN TRADITIONAL CIGARETTES

44. Cigarettes contain nicotine, a highly addictive stimulant. As described by the National Institutive of Drug Abuse:

> Most smokers use tobacco regularly because they are addicted to nicotine. Addiction is characterized by compulsive drug-seeking and use, even in the face of

negative health consequences. The majority of smokers would like to stop smoking, and each year about half try to quit permanently. Yet, only about 6 percent of smokers are able to quit in a given year. Most smokers will need to make multiple attempts before they are able to quit permanently. Medications including varenicline, and some antidepressants (e.g. bupropion), and nicotine-replacement therapy, can help in many cases . . . A transient surge of endorphins in the reward circuits of the brain causes a slight, brief euphoria when nicotine is administered. This surge is much briefer than the "high" associated with other drugs. However, like other drugs of abuse, nicotine increases levels of the neurotransmitter dopamine in these reward circuits, which reinforces the behavior of taking the drug. Repeated exposure alters these circuits' sensitivity to dopamine and leads to changes in other brain circuits involved in learning, stress, and self-control. For many tobacco users, the long-term brain changes induced by continued nicotine exposure result in addiction, which involves withdrawal symptoms when not smoking, and difficulty adhering to the resolution to quit.[3]

45.     JUUL products contain nicotine.  As compared to cigarettes, JUUL products deliver a significantly potent dosage of nicotine.

46.     Through Patent No 9,215,895 ("the JUUL patent"), PAX (the predecessor to JUUL) obtained a patent for "[a] nicotine Salt liquid formulation for generating an inhalable aerosol in an electronic cigarette comprising nicotine salt that forms about 0.5% to about 20% nicotine is provided."

47.     More specifically, the JUUL patent claims, inter alia, "[a] method of delivering nicotine to a user comprising deploying an electronic cigarette comprising a nicotine formulation that comprises nicotine, an acid, wherein the acid comprises pyruvic acid, salicylic acid, sorbic acid, lauric acid, levulinic acid, or benzoic acid, and a biologically acceptable liquid carrier…"

48.     The JUUL patent included a blood plasma study comparing the pharmacokinetic effects of nicotine benzoate though an e-cigarette as compared to nicotine through a Pall Mall traditional cigarette.

---

[3]  NIDA, *Is nicotine addictive?*, *available at* https://www.drugabuse.gov/publications/research-reports/tobacco-nicotine-e-cigarettes/nicotine-addictive.

49.     The study revealed that ingesting nicotine benzoate though an e-cigarette substantially increases nicotine delivery as compared to a traditional cigarette, *i.e.* that the e-cigarette delivered higher amounts of nicotine than a traditional cigarette.

50.     JUUL is delivering doses of nicotine that are several times higher than those allowed in normal cigarettes.  Blood test results in JUUL's 2014 patent application show that JUUL's nicotine solution delivers more nicotine to the bloodstream than a Pall Mall cigarette, creates a peak nicotine blood concentration that is 36% higher than a Pall Mall cigarette and increases the heart rate faster than a Pall Mall cigarette.  Yet Defendant has failed to disclose to consumers that the JUULpods' nicotine salt formulation delivers an exceptionally potent dose of nicotine.

51.     JUUL also repeatedly represented that a single JUULpod contains an amount of nicotine "about" equal to a pack of cigarettes. This statement is materially misleading because it is not just the amount of nicotine, but the efficiency with which the product delivers nicotine into the bloodstream (*i.e.* absorption or bioavailability), that determines the product's narcotic effect, risk of addiction, and therapeutic use.

52.     In short, Defendant has materially misrepresented the pharmacokinetic effect of JUUL products.

**B.     JUUL'S MARKETING AND PROMOTIONAL EFFORTS FOCUSED ON SOCIAL MEDIA PLATFORMS FREQUENTED BY CHILDREN**

53.     From its launch, JUUL has engaged in a highly successful marketing and promotional campaign for its products.

54.     Rather than relying on traditional advertising, JUUL elected to primarily focus upon establishing a pervasive social media presence.

55.     JUUL maintains a website at http://www.juul.com/, which was previously located at http://www.juulvapor.com/.

56.     JUUL maintains a Facebook account with the username @JUULvapor.  JUUL's Facebook account has approximately 8,350 "likes" and 8,800 "followers." Upon information and belief, JUUL launched its Facebook account in April 2015.

57.     JUUL maintains a Twitter account with the username @JUULvapor.  JUUL's Twitter account has approximately 18,400 followers. Upon information and belief, JUUL launched its Twitter account in June 2015.

58.     JUUL maintains an Instagram account with the username @JUULvapor.  JUUL's Instagram account has approximately 67,300 followers. Upon information and belief, JUUL launched its Instagram account in November 2017.

59.     Through its social media platforms, JUUL has attempted to cultivate a youthful, contemporary, sexy, and energetic image for its products.

60.     For example, JUUL posted the following statuses on its Twitter account on June 4, 2015:





61.     In addition to posts on its social media platforms, JUUL has heavily benefited from individuals' promotion of JUUL products on their own social media platforms, such as by discussing usage of JUUL products and sharing images and videos of usage of JUUL products.

62.     JUUL is aware that teenagers and others under 18 discuss and promote their usage of JUUL products on social media platforms, such as Instagram and Twitter

63.     JUUL encourages users to discuss and depict their usage of JUUL products on social media platforms.

64.     For example, as of April 2015, the JUUL website promoted a hashtag of #JUULvapor, encouraged individuals to "Join the conversation," and highlighted social media posts that utilized the #JUULvapor hashtag.

65. JUUL's website has also promoted the use of other hashtags over time, including #JUUL, #JUULpod, and #JUULpods.

66. The present version of the JUUL website contains hyperlinks to JUUL's Instagram, Twitter, and Facebook accounts.

67. On Instagram, there are approximately 195,000 posts using the #juul hashtag, approximately 29,600 posts using the #juulvapor hashtag, and approximately 16,400 posts using the #juulnation hashtag. Many of these posts contain images or videos of individuals under 18 using JUUL products.

68. As it continues to encourage individuals to promote their usage of JUUL products on social media platforms, JUUL is well aware that many of the individuals doing so are under 18.

69. In addition to its above-described social media presence, JUUL has utilized its website to cultivate a youthful, contemporary, sexy, trendy and energetic image of its products with the goal of appealing to a younger demographic.

70. For example, as of October 2015, the following images appeared on the JUUL website:











71.     To announce JUUL's release in June 2015, JUUL launched a multimillion-dollar "Vaporized" advertising campaign that was aimed at a youth audience. JUUL's Vaporized campaign used images that conveyed the same themes that tobacco companies used to prey on youth, including "independence, adventurousness, sophistication, glamour, . . . social inclusion, sexual attractiveness, thinness, popularity, rebelliousness, and being 'cool.'"





72.     A 2018 study concluded that JUUL's marketing strategy is heavily dependent on its social media presence catering to a youthful demographic:

> [O]ur study shows that the growth of JUUL was accompanied by innovative marketing across a variety of new media platforms. The marketing of other major retail e-cigarette brands, at least in their early stages, relied heavily on either advertising on TV (eg, Blu and Njoy) or promotional expenditures to retailers and consumers (eg, Vuse and MarkTen), or both. However, JUUL was one of the first major retail e-cigarette brands that relied heavily on social media to market and

16

promote its products. In particular, we found the number of JUUL-related tweets was highly correlated with quarterly retail sales of JUUL. In addition to Twitter, JUUL was heavily marketed and promoted on Instagram and YouTube. The official JUUL account on Instagram, for example, used a variety of marketing and promotional schemes to attract, engage with and retain followers. The account used artsy, professional-grade photographs to display its products and evoke lifestyle feelings such as relaxation, freedom and sex appeal. Those posts also heavily emphasised JUUL's variety of flavours.[4]

73.     In January 2016, the Centers for Disease Control and Prevention ("CDC") issued a report finding that "[a]bout 7 in 10 middle and high school students – more than 18 million young people – see e-cigarette advertising in stores, online, in newspapers and magazines, or on television and in movies."[5]

74.     The report explained:

E-cigarette ads use many of the same themes – independence, rebellion, and sex – used to sell cigarettes and other conventional tobacco products. Advertising of tobacco products has been shown to cause youth to start using those products. The unrestricted marketing of e-cigarettes and dramatic increases in their use by youth could reverse decades of progress in preventing tobacco use among youth.

*Id*.

75.     At the time, CDC Director Dr. Tom Frieden said:

The same advertising tactics the tobacco industry used years ago to get kids addicted to nicotine are now being used to entice a new generation of young people to use e-cigarettes[.] I hope all can agree that kids should not use e-cigarettes.

*Id*.

76.     In April 2018, the Food and Drug Administration ("FDA") announced an investigation of, *inter alia*, JUUL's marketing to youth.

---

[4] Jidong Huang et al., *Vaping versus JUULing: how the extraordinary growth and marketing of JUUL transformed the US retail e-cigarette market* (2018), *available at* https://tobaccocontrol.bmj.com/content/early/2018/05/31/tobaccocontrol-2018-054382 (footnotes omitted).
[5] CDC, *E-cigarette ads reach nearly 7 in 10 middle and high-school students* (Jan. 5, 2016), *available at* https://www.cdc.gov/media/releases/2016/p0105-e-cigarettes.html.

77.     As the FDA explained in announcing the investigation:

We need to examine all the available information to understand why kids are
finding these products so appealing – and address it.
That's why today, the FDA also sent an official request for information directly to
JUUL Labs, requiring the company to submit important documents to better
understand the reportedly high rates of youth use and the particular youth appeal of
these products. The information we're requesting includes: documents related to
product marketing; research on the health, toxicological, behavioral or physiologic
effects of the products, including youth initiation and use; whether certain product
design features, ingredients or specifications appeal to different age groups; and
youth-related adverse events and consumer complaints associated with the
products. We don't yet fully understand why these products are so popular among
youth. But it's imperative that we figure it out, and fast. These documents may help
us get there.[6]

78.     Exposure to nicotine as a youth has a profound effect on nicotine addiction.

79.     According to the CDC, "[n]early 9 out of 10 cigarette smokers first tried smoking
by age 18, and 98% first tried smoking by age 26."[7]

80.      Adolescents experience symptoms of dependence at lower levels of nicotine
exposure than adults, and adolescents who become addicted to nicotine as teens are more likely to
become life-long addicts than those who start smoking in their 20s or later.

81.     JUUL sells its JUULpods in a variety of sweetened flavors. The use of flavors that
appeal to youth hooks underage "vapers."[8]

82.     In 2009, the FDA banned cigarettes with characterizing flavors other than menthol
(e.g., cherry, chocolate), which are known to appeal to youth and young adults.[9]

---

[6] FDA, *Statement from FDA Commissioner Scott Gottlieb, M.D., on new enforcement actions and a Youth Tobacco Prevention Plan to stop youth use of, and access to, JUUL and other e-cigarettes* (Apr. 24, 2018), *available at* https://www.fda.gov/downloads/TobaccoProducts/Labeling/RulesRegulationsGuidance/UCM605490.pdf.
[7] CDC, *Youth and Tobacco Use*, *available at* https://www.cdc.gov/tobacco/data_statistics/fact_sheets/youth_data/tobacco_use/index.htm.
[8] *Juuling: What is the trendy vape pen becoming popular among teens,* ABC NEWS (Aug. 31, 2018), *available at,* https://abcnews.go.com/Nightline/video/juuling-trendy-vape-pen-popular-teens-56192940.
[9] FDA, *Menthol and Other Flavors in Tobacco Products, available at* https://www.fda.gov/tobaccoproducts/labeling/productsingredientscomponents/ucm2019416.htm.

83.     Defendant is using the same strategy to addict underage users to their products that cigarette companies previously used.

84.     JUUL products are priced to appeal to minors. A pack of four JUULpods, which, according to JUUL is the equivalent of four packs of cigarettes, costs approximately $19.99 in Florida.  By contrast, a single pack of cigarettes in Florida costs between approximately $6.85 and $8.20.

85.     The FDA conducted a surprise inspection at Juul Labs' San Francisco headquarters in late September 2018, seizing thousands of pages of documents related to its marketing practices.

C.      **JUUL E-CIGARETTES AND JUULPODS ARE HIGHLY ADDICTIVE**

86.     Defendant never disclosed to consumers that JUUL e-cigarettes and JUULpods are at least as addictive as, if not more addictive than, traditional cigarettes and pose serious health risks.

87.     Instead, Defendant marketed the JUUL products as an "alternative to cigarettes," thereby giving the false impression that they are a healthy alternative to cigarette use.

88.     Defendant's deceitful advertising campaign has proven successful, as use of JUUL products is widespread, particularly among vulnerable youth.

89.     Defendant actively concealed the nicotine content and nicotine potency of JUUL e-cigarettes from Plaintiffs and Class Members while simultaneously disclosing false or misleading evidence concerning nicotine content.

90.     Defendant concealed material information regarding the effect of JUUL e-cigarettes and made misrepresentations from the time the JUUL e-cigarette was announced to this day. Defendant still has not disclosed the truth about JUUL e-cigarettes.

91.     JUUL represents that purchasers may cancel their "auto ship" order on JUUL's subscription service "anytime," but this is highly deceptive because nicotine is addictive.  Once addicted, JUUL product users are unable to cancel subscription service because of their nicotine cravings.

## VI.     CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, Fla. Stat. §501.21, *et seq*.

92.     Plaintiffs reallege and incorporate by reference all preceding paragraphs.

93.     This Count does not sound in fraud.

94.     As set forth above, Defendant violated the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §501.21, et seq., when it engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce, represented that goods or services have characteristics, ingredients, uses, benefits or quantities that they do not have, and engaged in any other fraudulent or deceptive conduct which creates a likelihood of confusion and misunderstanding.

95.     FDUPTA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

96.     For the reasons discussed herein, Defendant violated and continues to violate FDUPTA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §501.201, et seq. Defendant's omissions and practices described herein were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

97.     Defendant's actions constitute unconscionable, deceptive, or unfair acts or practices. Defendant omitted material facts regarding the JUUL, and engaging in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, in violation of FDUTPA.

98.     Defendant knowingly engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits.

99.     Defendant's acts in violation of the laws of Florida include, but are not limited to:

- selling JUUL products to Plaintiffs as non-addictive nicotine delivery systems, or less addictive nicotine products than cigarettes;

- failing to disclose to Plaintiffs that the JUUL nicotine salts they were purchasing were highly addictive in nature, making it extremely difficult for Plaintiffs to cease purchasing JUUL pod refills;

- failing to disclose to Plaintiffs that the nicotine benzoate salts in JUUL pods delivered nicotine to blood plasma at a rate four times higher than a smoked Pall Mall cigarette, which was likely to make the nicotine addiction associated with JUUL products stronger and more severe than that associated with cigarettes or other e-cigarette products;

- developing and marketing a product that contained nicotine levels far in excess of what smokers need to comfortably switch from cigarettes, with the intention of creating and fostering long-term addiction to JUUL products;

- falsely and deceptively marketing, advertising and selling JUUL e-cigarettes and JUULpods by misrepresenting their nicotine content, nicotine pharmacokinetics, and suitability as an "alternative" to cigarettes, when in fact, JUUL is likely to aggravate nicotine addiction;

- falsely and deceptively marketing, advertising and selling JUUL's "autoship" service as something consumers could cancel "anytime" without disclosing to consumers how addiction associated with use of JUUL e-cigarettes would interfere with their ability to cancel the JUUL pod subscription;

- creating advertising that lured underage non-smokers into using JUUL e-cigarettes and disseminating that advertising through unregulated social media platforms commonly used by most youth in the United States; and

- setting the price of JUUL pods at a low price that is intended to and does attract underage users to purchase JUUL products.

100.     Plaintiffs and members of the FL Class suffered damages as a direct result of Defendant's' wrongful conduct when they purchased JUUL products.  Defendant's practices were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

101.     Plaintiffs and the FL Class would not have purchased JUUL products had they known the truth. Thus, they are entitled to refunds of all monies paid for JUUL products, as well as other damages suffered, including statutory and other damages.

102.     Plaintiffs seek, on behalf of themselves and members of the FL Class, an injunction to prohibit Defendant from continuing to engage in the deceptive and unfair trade practices complained of herein, and an order requiring Defendant to correct Defendant's misrepresentations, which have been disseminated through social media and other platforms.

## COUNT II
### FRAUD

103.     Plaintiffs reallege and incorporate by reference all preceding paragraphs.

104.     Defendant fraudulently and deceptively:

- sold JUUL products to Plaintiffs as non-addictive nicotine delivery systems, or less addictive nicotine products than cigarettes, when Defendant knew it to be untrue;

- failed to disclose to Plaintiffs that the JUUL nicotine salts they were purchasing and consuming were highly addictive in nature, making it extremely difficult for Plaintiffs to cease purchasing JUUL pod refills;

- informed Plaintiffs that they would be able to cease purchasing JUUL pods "anytime," when they knew it to be untrue; and

- failed to disclose to Plaintiff that the nicotine benzoate salts in JUUL pods delivered nicotine to blood plasma at a rate four times higher than a smoked Pall Mall cigarette, which was likely to make the nicotine addiction associated with JUUL products stronger and more severe than that associated with cigarettes or other e-cigarette products.

105.    Defendant made each of these fraudulent misrepresentations and omissions to Plaintiffs and members of the Class. These acts occurred during the time period relevant to and the dates set forth in this Complaint and within the three years prior to the filing of this Complaint.

106.    Each of these misrepresentations and omissions were material at the time they were made in that they were essential to the analysis undertaken by Plaintiffs, and members of the Class, as to whether to purchase a JUUL e-cigarette and JUUL pods.

107.    Defendant knew that these misrepresentations and omissions were false and intended that Plaintiffs and members of the Class rely on these misrepresentations and omissions to purchase JUUL products.

108.    Plaintiffs and members of the Class justifiably and reasonably relied on these misrepresentations and omissions to their detriment in that they purchased the JUUL products and were thereby damaged in the amount that they paid. Had Plaintiffs, and those similarly situated, been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation: (1) not purchasing a JUUL e-cigarette or JUUL pod; (2) not subscribing to Defendant's "autoship" service; or (3) purchasing and using different, less addictive nicotine products.

## COUNT III
## UNJUST ENRICHMENT

109.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

110.    Plaintiffs bring this claim on their own behalf and on behalf of the Class.

111.    Pleading in the alternative, Defendant has been unjustly enriched through its sale of JUUL products based on material misrepresentation and omissions, false advertising and fraud.

112.    Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the Class by Defendant's wrongful conduct, as alleged herein.  Defendant knowingly

received and retained wrongful benefits and funds from Plaintiffs and members of the Class. It would be inequitable to allow Defendant to retain these benefits and funds, which rightfully belong to Plaintiffs and each member of the Class.

113.    Plaintiffs and each member of the Class are therefore entitled to recover from Defendant, as restitution, all money they paid for JUUL products, any benefit received by Defendant as a result of such charges, plus interest thereon from the time of payment.

114.    A constructive trust should be established over the funds created by the aforementioned funds, interest and benefits generated in connection with the sale of JUUL products in violation of applicable laws. Restitution and disgorgement of such amounts should be ordered. Plaintiffs and members of the Class have no adequate remedy at law.

**COUNT IV**
**STRICT PRODUCT LIABILITY – FAILURE TO WARN**

115.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

116.    Defendant manufactured, distributed and sold JUUL devices and JUUL pods. Defendant was aware that the JUUL devices, when used in conjunction with the JUUL pods, had potential risks that were known and knowable in light of scientific and medical knowledge that was generally accepted in the scientific community at the time of design, manufacture, distribution and sale of JUUL devices and JUUL pods.

117.    The JUUL devices and pods were designed, manufactured and sold by Defendant in the regular course of business and were expected to and did reach Plaintiffs and Class members without substantial change in the condition in which they were manufactured, sold and distributed.

118.    Plaintiffs and Class members received the JUUL products in the same conditions in which they were sold, and used their JUUL devices and pods in a manner reasonably intended by Defendant.

119.    Defendant had no reason to believe that consumers of its JUUL products would be aware of the foreseeable harm associated with use of them.

120.    The risks and defects of the JUUL products is unknowable and unacceptable to the average or ordinary consumer. The ordinary consumer would not reasonably anticipate the danger that the JUUL products posed.

121.    The use of JUUL devices and JUUL pods presented a substantial danger of causing nicotine addiction when a JUUL device was used or misused with a JUUL pod in an intended or reasonably foreseeable way.

122.    Plaintiffs and Class members would not have recognized the potential risks of using a JUUL device with a JUUL pod because Defendant intentionally downplayed, misrepresented, or failed to warn of the risks of nicotine addiction that the JUUL device and JUUL pods posed and failed to disclose and warn that the product contained nicotine, the amount of nicotine or the absorption rates of that nicotine.

123.    Defendant failed to adequately warn or instruct foreseeable users of JUUL devices and JUUL pods of the risks of nicotine addiction that its products posed.

124.    As a direct and proximate result of Defendant's failure to warn of the defective and unreasonably dangerous condition and design of the JUUL products and the risk they posed, Plaintiffs and Class members suffered property damage and other incidental and consequential damages.

125.    Defendant's failure to warn and lack of sufficient instructions or warnings were a substantial factor in causing harm that resulted to Plaintiffs.

**COUNT V**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

126.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

25

127.     The Uniform Commercial Code § 2-314, as adopted in Florida provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. See Fla. Stat. § 672.314

128.     To be "merchantable," goods must "run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved," "are adequately contained, packaged, and labeled as the agreement may require," and "conform to the promise or affirmations of fact made on the container or label if any."

129.     The implied warranty of merchantability included with the sale of each JUUL product meant that Defendant warranted that its devices and pods would be merchantable, fit for the ordinary purposes for which they are used, pass without objection in the trade, be of fair average quality, and conform to promises and affirmations of fact made on the container and label. This implied warranty of merchantability is part of the basis for the bargain between Defendant and Plaintiffs and Class members.

130.     At the time of delivery however, Defendant breached the implied warranty of merchantability because its devices and pods were defective as alleged above, posed serious safety risks at the time they were sold, would not pass without objection, were not equivalent in terms of nicotine content, pharmacokinetics, and puff-count to cigarettes, and failed to conform to the standard performance of like products (cigarettes and e-cigarettes) used in the trade.

131.     Defendant is a merchant with respect to the good which were sold to Plaintiff and the Class, and there was an implied warranty that those goods were merchantable.

132.     JUUL e-cigarettes are not fit for their intended purposes of offering an alternative to cigarettes because JUUL e-cigarettes, when used as intended or reasonably foreseeable, worsen or aggravate users' underlying nicotine addiction.

133.     As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiffs and Class members have been damaged and seek damages in an amount to be determined at trial.

## COUNT VI
## BREACH OF EXPRESS WARRANTY

134.     Plaintiffs reallege and incorporate by reference all preceding paragraphs.

135.     Fla. Stat. § 672.313 provides the following:

(1) Express warranties by the seller are created as follows:

(a)     Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b)     Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description…

136.     Defendant issued express warranties in connection with their sale of JUUL devices and JUUL pods that JUUL use caused the same or less nicotine to enter the bloodstream than a cigarette, that JUUL pods contained about as much nicotine as a pack of cigarettes, and that 10 puffs of a JUUL was equivalent to smoking a cigarette, which were stated on the JUUL website and other media.

137.     In the marketing of its JUUL products, the affirmations of fact and promises that Defendant made and set forth directly above became part of the basis of the bargain between Defendant and Plaintiffs and all Class members.  This created express warranties that the JUUL products would conform to Defendant's affirmations of fact, representations, promises, and descriptions.

138.     Defendant breached its express warranties because JUUL pods and JUUL devices deliver more nicotine and more potent nicotine into the bloodstream than a cigarette, each JUUL

pod contains more nicotine than a pack of cigarettes, and fewer than 10 puffs of a JUUL are equivalent to smoking a cigarette with respect to nicotine ingestion.

139.     Plaintiffs and the Class members were injured as a direct and proximate result of Defendant's breach of express warranty because: (a) they would not have purchased JUUL products at all, they would have paid less for them, or they would have used them differently if they had known the true facts; (b) they paid a premium price for JUUL products as a result of Defendant's false warranties and misrepresentations; and (c) they purchased products that did not have the characteristics, qualities, or value promised by Defendant.

## COUNT VII
## NEGLIGENCE

140.     Plaintiffs reallege and incorporate by reference all preceding paragraphs.

141.     Defendant owed a duty to Plaintiffs and Class members to design, manufacture, produce, test, inspect, market, distribute, and sell the JUUL products with reasonable care and in a workmanlike fashion, and had a duty to protect Plaintiffs and Class members from foreseeable and unreasonable risk of harm.

142.     Defendant breached that duty by, among other things, as alleged above, misrepresenting the pharmacokinetics of JUUL e-cigarettes, the nicotine content of JUUL pods, the comparative nicotine content of JUUL pods and competing products, and the role of benzoic acid in JUUL pods.

143.     Defendant unreasonably failed to provide appropriate and adequate warnings and instructions about its products, and this failure was a proximate cause of the harm for which damages are sought.

144.     In addition, at the time the JUUL products left their control, Defendant knew, or in the exercise of reasonable care should have known, the products posed a substantial risk of harm to the life and health of its customers.

145.     Defendant knew, or in the exercise of reasonable care should have known, the JUUL products they designed, manufactured, produced, tested, inspected, marketed, distributed, and sold, created an unreasonable safety risk and that the products were marketed and sold with material misrepresentations and omissions of material facts. When making these statements, Defendant was aware that these representations were false or made them without knowledge of their truth or veracity.

146.     The negligent misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce, and actually induced, Plaintiffs and all Class members to purchase the products at issue.

147.     Defendant had a duty to disclose to the Plaintiffs and Class members the serious safety risks posed by JUUL products and that JUUL pods and JUUL devices deliver more nicotine into the bloodstream than a cigarette, each JUUL pod contains more nicotine than a pack of cigarettes, and more than 10 puffs of a JUUL are equivalent to smoking a cigarette.

148.     Defendant also had a duty to prominently display on all JUUL packaging and promotional and marketing materials at all times that JUUL contained nicotine, which is an addictive chemical and to disclose the true risks of using JUUL products.

149.     Defendant failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, advertising, packaging, distribution and sale of its products.

29

150.    Defendant also failed to exercise reasonable care in failing to warn or to warn adequately and sufficiently, either directly or indirectly, Plaintiffs and Class members of the addictive nature and negative health consequence of their products.

151.    Plaintiffs and Class members are entitled to damages and other legal and equitable relief as a result.

## COUNT VIII
## PUBLIC NUISANCE

152.    The Defendant herein has engaged in systematic deceptive marketing and promotion of JUUL products, as described above. . This misconduct has created, caused and/or substantially contributed to the public nuisance.

153.    Defendant's misconduct as set forth above has created or contributed to a substantial and unreasonable interference with rights common to the general public, including the right to be free of an unreasonable interference with public health, safety and peace.

154.    Defendant's interference with the public health, safety and peace through their misconduct has been unreasonable, as established by the following circumstances as more fully alleged previously herein:

a.    Defendant's misconduct is responsible for minors becoming addicted to nicotine and significantly interfered with public health, safety and peace;

b.    Defendant's misconduct is responsible for adults continuing to be addicted to nicotine and to become increasingly dependent on nicotine, rather than weaning themselves from nicotine, and significantly interfered with public health, safety and peace;

c.    Defendant's misconduct has produced a permanent or long-lasting effect and will continue unless the Defendant reveals the complete truth about their products,

30

including the serious safety and health risks posed by JUUL products, that JUUL

pods and JUUL devices deliver more nicotine into the bloodstream than a cigarette,

that each JUUL pod contains more nicotine than a pack of cigarettes, and that more

than 10 puffs of a JUUL are equivalent to smoking a cigarette. Defendant knew or

had reason to know that its misconduct has had and continues to have a significant

adverse impact on public health, safety and peace;

d.      Defendant's conduct is and was unlawful, including, without limitation, pursuant

to the Florida Deceptive and Unfair Trade Practices Act (Florida Statutes §501.21,

et seq.,) as more fully set forth herein; and

e.      Defendant's interference with rights common to the public is and was unreasonable

based on the totality of the circumstances.

155.    The unreasonableness of Defendant's conduct and the resulting substantial harm

imposed and the infringement of their rights is evident from the gravity of the harm, *e.g.,* nicotine

addiction and its negative health consequences, and from the accompanying serious effects that

interfered with and degraded, and continues to interfere with and degrade, the public health and

safety.

156.    The deterioration of public health and safety caused by the JUUL products tears at

the social and economic fabric of society; its impact is not limited to JUUL consumers adversely

affected by the negative health consequences of nicotine and the other JUUL ingredients, but have

been socialized and ultimately borne by the community as a whole.

157.    Defendant's JUUL e-cigarettes and JUULpods deliver dangerous toxins and

carcinogens to its users, including teenage users. Nicotine itself is a carcinogen, as well as a toxic

chemical associated with cardiovascular, reproductive, and immunosuppressive problems.

Nicotine adversely affects the heart, eyes, reproductive system, lung, and kidneys. Exposure to nicotine produces an increased risk of Coronary Vascular Disease by producing acute myocardial ischemia, as well as an increased risk of peripheral arterial disorders. Because vaping introduces foreign substances into the lungs, prolonged use of JUUL products may produce chronic obstructive pulmonary disease, just like traditional cigarette smoke. Vaping also triggers immune responses associated with inflammatory lung disease.

158.    The negative effects of addicting minors to nicotine and continuing the nicotine addictions of adults who are attempting to wean themselves from nicotine on the public health, safety and peace are substantial and community-wide, and include, but are not limited to, increased costs for medical care, increased health insurance costs for members of the public, an increased strain on the medical system which affects the quality and cost of medical care available to the public, reduced productivity and economic output of JUUL consumers because of time spent vaping, which affects the economy as a whole, the cost to society of supporting nicotine ingestion cessation programs, increased life insurance rates for all, increased social services, increased disability benefits and others.

159.    Defendant had sufficient control over, and responsibility for, the public nuisance they created, as alleged more fully herein. Defendant was in control of the "instrumentality" of the nuisance, including the process of marketing and promotion and creation and maintenance of the demand for JUUL products at all relevant times, which included control of the misleading representations they conveyed through marketing and product promotion.

160.    Defendant could have ameliorated, at least in part, the public nuisance by ceasing its improper marketing of JUUL products and its dissemination of misleading information about

the safety and efficacy of their products, and by disseminating corrective statements that informed consumers and others about the true risks of JUUL products.

161.    Defendant is not immune from public nuisance claims because it produced and marketed otherwise and/or allegedly legal products. Lawful conduct of businesses, like lawful conduct of individuals, has long been held to constitute a public nuisance if it unreasonably interferes with public health, safety, or peace. In any event, Defendant's conduct- and the deceptive marketing and product promotion and misrepresentations and omissions embodied therein - was unlawful.

162.    The injury, damage and costs to society from Defendant's misconduct were both significant and either known or wholly foreseeable to Defendant. While reaping millions of dollars in revenues and profits through their misconduct, the Defendant improperly shifted the burden, harm and costs of its public nuisance to the community as a whole, and its residents, which the community has and will continue to have to address to its detriment.

163.    Plaintiffs have suffered and continue to suffer special harm that is different in kind and degree from that suffered by individual residents of Florida as alleged herein.

164.    Plaintiffs sue in their public capacity for all appropriate injunctive and mandatory relief to abate the ongoing public nuisance, restore the public health, safety and peace, and recover all appropriate damages, expenses, costs and fees.

165.    Plaintiffs also sue in their private capacity to recover the additional costs they have incurred or will incur as a result of Defendant's nuisance and other appropriate damages, expenses, costs and fees.

166.    Defendant also is liable for punitive damages to reflect the aggravating circumstances of its intentional, willful, wanton, malicious and oppressive conduct as set forth herein. Defendant

acted or failed to act knowingly, willfully and deceptively, with gross negligence, maliciously, and/or wantonly with conscious disregard of the public's health, safety, and welfare.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs pray for judgment as follows:

1.      That this Court certify this action as a Class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), and appoint Plaintiffs and their counsel to represent the FL Class;

2.      That this Court enter judgment and award damages in favor of Plaintiffs and the FL Class, and against Defendant under the theories alleged herein;

3.      That this Court enjoin Defendant from its unlawful conduct;

4.      That this Court order Defendant to refund all monies obtained or statutory damages, whichever is greater, by means of their violations of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.21, *et seq*.), including trebling such damages if allowed;

5.      That this Court award Plaintiffs all attorneys' fees, expenses and costs of this suit to the fullest extent allowed by law;

6.      That this Court award Plaintiffs punitive and tremble damages to the fullest extent allowed by law;

7.      That this Court award Plaintiffs pre-judgment and post-judgment interest at the maximum rate allowable by law, compounded daily; and

8.      That this Court grant such other, further, and different relief that the Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial on all issues and claims so triable.

Dated: October 10, 2018                    _____*s/Jonathan Z. DeSantis*_____

                                           **BERGER MONTAGUE P.C.**
                                           Sherrie R. Savett (*pro hac vice* forthcoming)
                                           Barbara A. Podell
                                           Russell D. Paul (*pro hac vice* forthcoming)
                                           Jonathan Z. DeSantis (FBN 112446)
                                           1818 Market Street, Suite 3600
                                           Philadelphia, PA 19103
                                           Tel.: (215) 875-3000
                                           Email: ssavett@bm.net
                                                  bpodell@bm.net
                                                  rpaul@bm.net
                                                  jdesantis@bm.net

                                           **FREIWALD LAW**
                                           Aaron J. Freiwald (*pro hac vice*
                                           forthcoming)
                                           1500 Walnut Street, 18th Floor
                                           Philadelphia, PA 19102
                                           Tel.: 215.875.8000
                                           Email: ajf@freiwaldlaw.com

                                           *Attorneys for Plaintiffs and the Proposed
                                           Class*

Kal. 8317338

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| J.Y., a minor, by and with his mother and Natural Guardian BARBARA YANNUCCI, individually and on behalf of those similarly situated, | JUUL LABS, INC., |

| **(b)** County of Residence of First Listed Plaintiff St. Lucie County | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Berger & Montague, P.C., 1818 Market Street Ste. 3600, Philadelphia, PA 19103 (215) 875-3000 | N/A |

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☑ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

| **II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)* | | **III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)* | | | |
|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* | | **PTF DEF** | | **PTF DEF** |
| | | Citizen of This State | ☑ 1 ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☑ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | Citizen of Another State | ☐ 2 ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 ☑ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3 ☐ 3 | Foreign Nation | ☐ 6 ☐ 6 |

**V. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☑ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **Other:** | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

| **V. ORIGIN** *(Place an "X" in One Box Only)* | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ☑ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Re-filed (See VI below) | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district *(specify)* | ☐ 6 Multidistrict Litigation Transfer | ☐ 7 Appeal to District Judge from Magistrate Judgment | ☐ 8 Multidistrict Litigation – Direct File | ☐ 9 Remanded from Appellate Court |

| **VI. RELATED/ RE-FILED CASE(S)** | *(See instructions):* a) Re-filed Case ☐YES ☑NO | b) Related Cases ☐YES ☑NO | |
|---|---|---|---|
| | JUDGE: | | DOCKET NUMBER: |

**VII. CAUSE OF ACTION** Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity):* Products liability claims

LENGTH OF TRIAL via 10 days estimated (for both sides to try entire case)

| **VIII. REQUESTED IN COMPLAINT:** | ☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 10,000,000.00 | CHECK YES only if demanded in complaint: |
|---|---|---|---|
| | | | JURY DEMAND: ☑ Yes ☐ No |

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

DATE October 10, 2018    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ IFP _____ JUDGE _____ MAG JUDGE _____

JS 44 (Rev. 06/17) FLSD Revised 06/01/2017

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.  (a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked. Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  **Nature of Suit.** Nature of Suit. Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V.  **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Refiled (3) Attach copy of Order for Dismissal of Previous case. Also complete VI.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

Remanded from Appellate Court. (8) Check this box if remanded from Appellate Court.

VI.  **Related/Refiled Cases.** This section of the JS 44 is used to reference related pending cases or re-filed cases. Insert the docket numbers and the corresponding judges name for such cases.

VII.  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

VIII.  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| J.Y., a minor, by and with his mother and Natural Guardian BARBARA YANNUCCI, individually and on behalf of those similarly situated, | )<br>)<br>)<br>) |
| *Plaintiff(s)* | )<br>) |
| v. | )  Civil Action No. |
| JUUL LABS, INC., | )<br>)<br>)<br>)<br>) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  JUUL LABS, INC.,
c/o Registered Agent INCORPORATING SERVICES, LTD.
3500 S DUPONT HWY
Dover, DE 19901

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Berger & Montague, P.C.
Russell D. Paul
1818 Market Street, Ste. 3600
Philadelphia, PA 19103
(215) 875-3000

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: